**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

            Plaintiff,

v.

Jaime Ira Henning,

            Defendant.

**MEMORANDUM OPINION**
**AND ORDER**
Criminal No. 14-352 ADM
Civil No. 16-1160 ADM

_____

David M. Genrich, Esq., Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Jaime Ira Henning, pro se.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Jaime Ira Henning's Motion to Vacate under 28 U.S.C. § 2255 ("2255 Motion") [Criminal Docket No. 41].[1] Henning alleges ineffective assistance of counsel based on: 1) counsel's failure to object to errors in the presentence report regarding loss amount; 2) the imposition of a sentencing enhancement due to the number of victims; 3) the imposition of a sentencing enhancement due to the possession of device making equipment; and 4) counsel's advice to accept the plea agreement that included the enhancements. For the reasons set forth below, Henning's Motion is denied.

## II. BACKGROUND

On November 19, 2014, Henning pled guilty to the single count of Access Device Fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 1029(c)(1)(A)(i) as charged in the Information

---

[1] All docket citations are to the Criminal Docket.

[Docket No. 1]. According to the Revised Presentence Investigation Report ("RPSR"), Henning purchased credit card account numbers that were illegally obtained through hacking or "skimming" a point of sale terminal or an ATM.[2] RPSR ¶¶ 12, 13. Henning then used a website to purchase professional looking credit cards that were reencoded with the stolen credit card information. Id. ¶ 14. Throughout 2013, Henning possessed at least 425 stolen credit card numbers and 267 of those were reencoded onto counterfeit credit cards. Id. After the cards were reencoded, Henning distributed them to associates who used the cards to defraud merchants and financial institutions in the Twin Cities area. Id. ¶ 16.

On December 19, 2013, inspectors executed a search warrant at Henning's residence. Id. ¶ 15. The search revealed fake driver's licenses, a credit card magnetic stripe card reader/writer, and computers that contained 286 stolen credit card account numbers. Id. On October 29, 2014, Henning was charged by Information with Access Device Fraud based on the evidence seized during the December 19, 2013 search. Id. ¶ 1.

On November 19, 2014, after pleading guilty to Access Device Fraud, Henning was placed on pretrial supervision and was ordered to submit to controlled substance testing. See Order [Docket No. 9]. The following day, Henning tested positive for cocaine, marijuana, opiates, and benzodiazepines, and on December 22, 2014, a warrant was issued for his arrest. See Violation Report [Docket No. 12]; Order [Docket No. 14]. On December 29, 2014, Magistrate Judge Tony N. Leung ordered Henning detained until sentencing. See Order Temporary Detention [Docket No. 17].

The RPSR determined that Henning's total offense level was 23. RPSR ¶ 38. The

---

[2] "Skimming" is a type of credit card theft wherein a small device is utilized to capture and steal the information stored in a credit card's magnetic strip.

offense level included a 12-level enhancement under U.S.S.G. §2B1.1(b)(1)(G) because the amount of loss was greater than $200,000 but less than $400,000; a six-level enhancement under §2B1.1(b)(2)(C) because the offense involved more than 250 victims; and a two-level enhancement under § 2B1.1(b)(11)(A)(I) because the offense involved the possession of device-making equipment. Id. ¶¶ 28–30. The guideline imprisonment range was 84 months to 105 months. Id. ¶ 105. Neither party objected to the findings of the RPSR.

On April 30, 2015, Henning was sentenced to 70 months imprisonment. See Minute Entry [Docket No. 28]. Henning did not directly appeal his sentence. On May 2, 2016, Henning filed this 2255 Motion.

### III.  DISCUSSION

#### A.  Section 2255 Standard

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 185 (1979). Relief is reserved for violations of constitutional rights and for a narrow range of injuries which were outside a direct appeal and which, if untreated, would result in a miscarriage of justice. See Poor Thunder v. United States, 810 F.2d 817, 821–22 (8th Cir. 1987). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

#### B.  Ineffective Assistance of Counsel

Henning raises four arguments he contends demonstrates he received ineffective

assistance of counsel:  1) counsel's failure to object to errors in the presentence report regarding loss amount; 2) the imposition of a sentencing enhancement due to the number of victims; 3) the imposition of a sentencing enhancement due to the possession of device-making equipment; and 4) counsel's advice to accept the plea agreement that included the enhancements.

In Strickland v. Washington, the Supreme Court set forth the standard for claims of ineffective assistance of counsel.  466 U.S. 668 (1984).  To properly demonstrate a claim, a defendant must show that his attorney's representation fell below an objective standard of reasonableness.  Id. at 687-88.  The defendant must also demonstrate that a reasonable probability exists that but for the attorney's errors, the result of the proceeding would have been different.  Id. at 694.

**1) Loss Amount**

Henning first argues that his trial attorney failed to object to errors in the RPSR regarding the amount of loss.  The RPSR concluded a 12-level enhancement was warranted because the amount of loss in this case was at least $212,500.  In his Motion, Henning does not articulate an explicit reason why the amount of loss is incorrect, nor does he explain in what way his counsel erred.  Rather, Henning writes, "[i]t becomes clear that the counsel's failure to know and understand the definition of loss and what the actual loss was constitutes the 'cause' prong of the two part test for ineffective assistance of counsel."  2255 Motion at 3.  Henning concludes that he was sentenced at a higher offense level than appropriate.

The 2014 United States Sentencing Guidelines, under which Henning was sentenced, sets a 12-level enhancement for access device fraud where the amount of loss exceeds $200,000 but is less than $400,000.  U.S.S.G. §2B1.1(b)(1)(G).  The Application Notes to this subsection states that loss "shall be not less than $500" per each unauthorized access device.  Id. App. Note

(3)(F)(I). In his plea agreement, Henning admitted to possessing at least 425 unauthorized access devices. Calculating the minimum amount of loss at $500 for each of the 425 unauthorized access devices Henning admitted to possessing equals $212,500, which is the amount of loss reflected in the RPSR. Because loss was properly calculated, it cannot be said that Henning's counsel's representation was deficient for not challenging the 12-level sentencing enhancement.

### 2) Number of Victims

Henning next challenges the number of victims of the access device fraud. The RPSR concluded that there were at least 425 victims in this case. Henning disagrees and argues that there were only two victims here, Wells Fargo Bank and World's Foremost Bank. 2255 Motion at 3.

The relevant section of the sentencing guidelines defines "victim" as "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. §2B1.1, App. Note 4(E)(ii). The guidelines define "means of identification" equal to how that term is defined by 18 U.S.C. § 1028(d)(7). Id. App. Note 1. Under 18 U.S.C. § 1028(d)(7), a "means of identification" is understood to be an "access device" as defined in § 1029(e), which includes stolen credit card account numbers.

Henning admitted to using at least 267 stolen credit card numbers. Therefore, under the definition of "victim" under U.S.S.G. §2B1.1, Henning's crime resulted in at least 267 victims. The guidelines provide a six-level sentencing enhancement for offenses that involve over 250 victims. U.S.S.G. § 2B1.1(b)(2)(C). Because the RPSR accurately totaled the number of victims in this case, Henning did not receive ineffective assistance of counsel for his counsel's failure to object to the number of victims.

**3) Possession of Device-Making Equipment**

Henning argues the two-level enhancement imposed for the possession of device-making equipment was improper. According to Henning, the card reader discovered by inspectors during the December 19, 2013 search of his residence does not meet the definition of "device-making equipment" because it was unable to "make anything." 2255 Motion at 4. Henning argues that his counsel failed to discern the difference between the card reader Henning possessed and what constitutes device-making equipment.

Under 18 U.S.C. § 1029(e)(6), "'device-making equipment' means any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." While Henning claims the device discovered at his residence "could not make anything," the device was identified in the plea agreement and the RPSR as a "MSR 505C/Magnetic stripe card reader/writer." 2255 Motion at 4; RPSR ¶ 15; Plea Agreement 2(e).[3] In United States v. Lyles, it was found that "device-making equipment includes an encoder used to put credit card numbers onto the magnetic strips" of credit cards. 509 F. App'x 440, 448–49 n.9 (6th Cir. 2012). The definition of "device-making equipment" plainly encompasses the MSR 505C/Magnetic stripe card reader/writer found in Henning's residence. Because there was no factual or legal basis for objection to the two-level enhancement, Henning's trial counsel's performance did not fall below an objective standard of reasonableness.

---

[3] Henning argues that this Court should inquire whether the equipment at issue was designed for or primarily used to make access devices, citing United States v. Cabrera, 208 F.3d 309, 312–15 (1st Cir. 2000). Cabrera, on appeal after jury trial and verdict, addressed the sufficiency of the evidence presented at trial and whether it properly supported the jury's verdict that the defendant possessed a "device-making implement"—equipment that was "specially designed or generally used" to produce false documents. Id. at 312 (emphasis in original). No such inquiry is required here because Henning's plea agreement outlined the parties' understanding that Henning possessed device-making equipment. Plea Agreement ¶ 7(b).

6

**4) Accepting the Plea Agreement**

Finally, Henning charges that the plea agreement that he was advised to accept included errors that increased his sentence. Having concluded that the three errors Henning identifies were not errors but were rather appropriately applied enhancements, he was not provided ineffective assistance of counsel in being advised to accept the plea agreement.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Henning's petition would be debatable among reasonable jurists. Thus, the Court declines to grant a certificate of appealability.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jaime Ira Henning's Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 41] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 26, 2016.